IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SCOTTSDALE INSURANCE COMPANY,

        Plaintiff and
        Counter-Defendant,

v.                  //   CIVIL ACTION NO. 1:11CV33
                         (Judge Keeley)

HARLEYSVILLE INSURANCE COMPANY, a
Pennsylvania corporation,

        Defendant, Counter-Claimant,
        and Third-Party Plaintiff,

v.

LIBERTY SURPLUS INSURANCE CORPORATION,

        Third-Party Defendant.

## MEMORANDUM OPINION ON CHOICE OF LAW BRIEFING
### PURSUANT TO SUMMARY ORDER [DKT. NO. 44]

Pending for decision is the question of which state law should apply to disputed coverage provisions in the several insurance policies purchased by the parties to this case. For the reasons that follow, the Court concludes that the law of Pennsylvania governs the contract disputes involving the Harleysville Policy, and Oregon law governs the disputes involving the Scottsdale and Liberty Surplus Policies.

## I. FACTUAL BACKGROUND

### A. The Fairfield Inn Project Contracts

On November 9, 2007, Granville Hospitality Group, LLC ("Granville") and Wright Development SC, LLC ("Wright SC") entered

**MEMORANDUM OPINION ON CHOICE OF LAW BRIEFING**
**PURSUANT TO SUMMARY ORDER [DOCKET NO. 44]**

into a contract providing that Wright SC would construct the Fairfield Inn & Suites by Marriot, located at 2500 University Town Centre Drive, Granville, West Virginia (the "Fairfield Inn Project"). Pl.'s Am. Compl. ¶¶ 16-17, Nov. 14, 2011, Dkt. No. 28. Thereafter, in January 2008, Wright SC subcontracted with Lonnie Ball Contracting, LLC ("Lonnie Ball") to perform the plumbing work on the Fairfield Inn Project. Def.'s Answer ¶¶ 156-57, Dec. 5, 2011, Dkt. No. 29; Am. Compl., Ex. 6, Dkt. Nos. 28-8, 28-9. Later, between June and July, 2008, Wright Development, LLC ("Wright Development") and Lonnie Ball entered into four subcontracts which provided that Lonnie Ball also would perform all work on the Fairfield Inn Project relating to the installation of 1) the HVAC system, 2) windows and openings, 3) roofing, and 4) glass. Id. (For purposes of convenience, in this memorandum opinion all five subcontracts will be referred to collectively as the "Lonnie Ball Subcontracts.")

The five subcontracts required Lonnie Ball to maintain comprehensive general liability insurance throughout the duration of its work. Am. Compl., Ex. 6, Dkt. Nos. 28-8, 28-9. Each also contained the following "additional insured" provision:

**MEMORANDUM OPINION ON CHOICE OF LAW BRIEFING
PURSUANT TO SUMMARY ORDER [DOCKET NO. 44]**

> <u>Additional Insured Endorsement</u>. WRIGHT shall be named as an additional insured on Subcontractor's Comprehensive General Liability Insurance Policy. Unless otherwise agreed in writing, subcontractor shall deliver to WRIGHT a copy of the additional insured endorsement before subcontractor commences work on the project. The Comprehensive General Liability Insurance Policy shall include a provision or endorsement naming both the Owner and WRIGHT and their officers and their employees as additional insureds with respect to liabilities arising out of the subcontractor's performance of Subcontractor's Work under this agreement and providing that such insurance is primary insurance with respect to the interest of WRIGHT and that any other insurance maintained by WRIGHT and an Owner is excess and not contributing insurance with the insurance requirement hereunder.

<u>Id.</u>

The subcontracts also indemnified Wright for Lonnie Ball's performance of the work, as follows:

> **INDEMNIFICATION:** Subcontractor acknowledges that it, and not WRIGHT, is primarily responsible for successful completion of Subcontractor's work. To the fullest extent permitted by law and for so long as WRIGHT may be liable, Subcontractor shall defend, indemnify and hold WRIGHT harmless from all damages, losses, or expenses, including attorney's fees, from any and all claims for damages arising out of or in any way related to subcontractor's work described herein. This indemnification shall also extend to performance of this Agreement. The obligation to defend shall be effective regardless of whether the claim or loss is alleged to have been caused in part by an act or omission of WRIGHT.

<u>Id.</u>

**SCOTTSDALE INS. CO. V. HARLEYSVILLE INS. CO.
V. LIBERTY SURPLUS INS. CO.**

**1:11CV33**

**MEMORANDUM OPINION ON CHOICE OF LAW BRIEFING
PURSUANT TO SUMMARY ORDER [DOCKET NO. 44]**

In September 2008, Lonnie Ball provided a Certificate of Liability Insurance to Wright Development. Am. Compl., Ex. 7, Dkt. No. 28-10. It did not, however, deliver a similar certificate to Wright SC. Answer at ¶¶ 162-63.

**B. Wright's Insurance Policy**

Prior to the signing of the Lonnie Ball subcontracts, Scottsdale Insurance Company ("Scottsdale"), in 2007, had issued a commercial general liability policy (the "Scottsdale Policy") to Robert Wright ("Wright"), with effective dates of July 24, 2007 to July 24, 2008. Am. Compl., Ex. 1, Dkt. No. 28-1. Wright, whose corporate offices are in Portland, Oregon, purchased the Scottsdale Policy from Crump Insurance Services Northwest ("Crump"), an insurance agency located in Portland. Id. The schedule of named insureds in the Scottsdale Policy listed Wright d/b/a Wright Development and Wright Development California, Inc ("Wright California"). Id. Effective December 11, 2007, however, the schedule of named insureds was amended to include Wright d/b/a Wright Development West Coast, LLC (an Oregon company whose only member is Wright) and Wright California (an Oregon corporation). Id.; see also Def.'s Br. 3-4, Apr. 6, 2012, Dkt. No. 52. The

Scottsdale Policy also listed four insured locations, including two work sites in Oregon and two in California.  <u>See</u> Am. Compl., Ex. 1, Dkt. Nos. 28-1, 28-2; <u>see also</u> Def.'s Br. at 3.

In 2008, Wright renewed the Scottsdale Policy, effective July 24, 2008 through July 24, 2009.  Am. Compl., Ex. 2, Dkt. No. 28-3.  Initially, the schedule of named insureds in this policy included Wright SC, Wright Development West Coast, LLC, and Wright Development-California, LLC. <u>Id.</u> On February 17, 2009, however, the schedule of named insureds was amended to add Wright Hotel Development, Inc. (a Nevada corporation) and WD Mechanical (an Oregon company whose members are unknown).  Am. Compl. Ex. 2, Dkt. Nos. 28-3, 28-4; <u>see also</u> Def.'s Br. at 4-6. The listing of insured locations in the renewed Scottsdale Policy included two work sites in Oregon, two in California, and one in South Carolina.  <u>See</u> Am. Compl., Ex. 1, Dkt. Nos. 28-1, 28-2; <u>see also</u> Def.'s Br. at 5.

Of importance to the issues in dispute here, Wright's Scottsdale Policy included the following "other insurance" provisions:

**Other Insurance**
If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of

5

this Coverage Part, our obligations are limited as
follows:

**a. Primary Insurance**

This insurance is primary except when b. below applies.
If this insurance is primary, our obligations are not
affected unless any of the other insurance is also
primary.   Then, we will share with all that other
insurance by the method described in c. below.

**b. Excess Insurance**

This insurance is in excess over: . . .

(2) Any other primary insurance available to you covering
liability for damages arising out of the premises or
operations, or the products and completed operations, for
which you have been added as an additional insured by
attachment of an endorsement.

When this insurance is excess, we will have no duty under
Coverages A or B to defend the insured against any "suit"
if any other insurer has a duty to defend the insured
against that "suit."  If no other insurer defends, we
will undertake to do so, but we will be entitled to the
insured's rights against all those other insurers.

Am. Compl., Ex. 1, Dkt. No. 28-1.

       In addition to the Scottsdale Policy, through Crump, Wright

Development purchased excess commercial general liability coverage

from Liberty Surplus Insurance Corporation ("Liberty Surplus") (the

"Liberty Surplus Policy"), effective December 6, 2007 through

December 6, 2008.  <u>See</u> Answer, Ex. C, Dkt. Nos. 29-3, 29-4.  The

SCOTTSDALE INS. CO. V. HARLEYSVILLE INS. CO.
V. LIBERTY SURPLUS INS. CO.

**1:11CV33**

**MEMORANDUM OPINION ON CHOICE OF LAW BRIEFING
PURSUANT TO SUMMARY ORDER [DOCKET NO. 44]**

named insured on the Liberty Surplus Policy was amended on
December 6, 2007, to delete Wright Development and add Wright SC.
See id.

## C. **Lonnie Ball's Insurance Policies**

In 2007, Harleysville Insurance Company ("Harleysville")
issued a business owner's policy (the "Harleysville Policy") to
Lonnie Ball, which provided comprehensive general liability
coverage to Lonnie Ball effective December 11, 2007 through
December 11, 2008. See Answer, Ex. F, Dkt. No. 29-6. Lonnie Ball
renewed the Harleysville Policy in 2008 through December 11, 2009.
See id. Lonnie Ball, whose corporate offices are located in
Pittsburgh, Pennsylvania, purchased the Harleysville Policy from
Hurst-Weiss Insurance Agency, Inc. ("Hurst-Weiss Insurance"), which
is also located in Pittsburgh. See id.; see also Def.'s Br. at 2.
The Harleysville Policy identified two insured locations in
Pennsylvania, see Answer, Ex. F, Dkt. No. 29-6, and contained the
following additional insured endorsement:

> [A]ny general contractor, subcontractor or owner whom you
> are required to add as an additional insured on this
> policy under a written or oral construction contract or
> agreement where a certificate of insurance showing that

person or organization as an additional insured has been
issued and received by "us" prior to the date of loss.

<u>Id.</u>  The Harleysville Policy also contained the following "other

insurance" provisions:

> 1. If there is other insurance covering the same loss or
> damage, we will pay only for the amount of covered loss
> or damage in excess of the amount due from that other
> insurance, whether you can collect on it or not.  But we
> will not pay more than the applicable Limit of Insurance.
>
> 2. Business Liability Coverage is excess over any other
> insurance that insures for direct physical loss or
> damage.
>
> 3. When this insurance is excess, we will have no duty
> under Business Liability Coverage to defend any claim or
> "suit" that any other insurer has a duty to defend.  If
> no other insurer defends, we will undertake to do so; but
> we will be entitled to the insured's rights against all
> those other insurers.

<u>Id.</u>

## D. **The Granville Litigation**

In February 2009, Granville removed Wright SC as the general

contractor on the Fairfield Inn Project, citing Wright SC's failure

to perform its contractual duties in a workmanlike manner.  <u>See</u> Am.

Compl. at ¶ 18 Ex. 4, Dkt. No. 28-6.  Specifically, Granville was

concerned about "numerous examples of improperly completed, non-

code installation to include room air handling, plumbing,

8

electrical, HVAC, and sanitary sewer lines, and fire code requirements." Id.

Following Wright SC's removal from the Fairfield Inn Project, Granville sued it in the Circuit Court of Monongalia County, West Virginia, seeking damages for breach of contract, breach of implied warranty, negligence, and fraud (the "Granville State Action"). See id. Wright SC removed the Granville State Action to this Court, where it was dismissed in favor of arbitration (the "Granville Arbitration Proceeding"). See Am. Compl. at ¶ 20. Granville then sued Wright SC in federal court under an "alter ego" theory, alleging breach of contract, breach of implied warranty, negligence, and fraud (the "Granville Federal Action").[1] See Am. Compl. at ¶ 21.

Subject to a reservation of rights, Scottsdale agreed to defend and indemnify Wright SC in all proceedings. See Am. Compl. at ¶ 24. Nevertheless, claiming additional insured status, Wright SC demanded that Harleysville defend and indemnify it under the

---

[1] Also named in the Granville Federal Action were Wright Hotel Development, Inc.; Wright Development Nevada II, LLC; Wright Hotel Development - Wild Horses, LLC; and Wright Hotel Development - Bear River, LLC. See Am. Compl., Ex. 5, Dkt. No. 28-7.

SCOTTSDALE INS. CO. V. HARLEYSVILLE INS. CO.
V. LIBERTY SURPLUS INS. CO.

**1:11CV33**

**MEMORANDUM OPINION ON CHOICE OF LAW BRIEFING
PURSUANT TO SUMMARY ORDER [DOCKET NO. 44]**

Lonnie Ball Harleysville Policy.  <u>See</u> <u>id.</u> at ¶ 30.  Harleysville refused to do so, however, on the basis that Wright SC was not an additional insured under its policy inasmuch as the Certificate of Liability Insurance only named Wright Development as a certificate holder.  <u>See</u> Am. Compl., Ex. 8, Dkt. No. 28-11.

On behalf of Wright SC, Scottsdale twice wrote to Harleysville demanding that it participate in scheduled mediation in the Granville Arbitration Proceeding, but Harleysville persisted in its refusal to do so.  <u>See</u> Am. Compl. at ¶¶ 32-35. After receiving notice from Scottsdale and Wright SC of an offer to settle all claims against the Wright entities for $850,000, Harleysville again refused to participate in the settlement negotiations.  <u>See</u> <u>id.</u> at ¶ 36.  Eventually, in April 2011, Scottsdale settled all the Granville litigation against the Wright entities for $850,000 without any contribution from Harleysville.  <u>See</u> <u>id.</u> at ¶ 37.

### E.  **The Coverage Dispute**

Following the settlement of the Granville litigation, on November 14, 2011, Scottsdale filed an amended complaint against Harleysville in which it alleged claims for other insurance (Count One), equitable contribution and subrogation (Count Two), breach of

10

SCOTTSDALE INS. CO. V. HARLEYSVILLE INS. CO.
V. LIBERTY SURPLUS INS. CO.

**1:11CV33**

**MEMORANDUM OPINION ON CHOICE OF LAW BRIEFING
PURSUANT TO SUMMARY ORDER [DOCKET NO. 44]**

contract (Count Three), breach of the covenant of good faith and fair dealing (Count Four), and violation of the Unfair Trade Practices Act (the "UTPA") (Count Five). On December 5, 2011, Harleysville answered the complaint, filed a third-party complaint against Liberty Surplus, and also filed a counter-claim against Scottsdale, which sought a declaration that Harleysville had no duty to defend or indemnify Wright or any of the Wright entities in the Granville litigation. In order to resolve the coverage issues disputed by the parties, the Court must apply West Virginia's choice of law principles and determine which law applies to the interpretation of the Harleysville, Scottsdale and Liberty Surplus Policies.

## II. <u>LEGAL ANALYSIS</u>

### A.  <u>Liberty Mut. Ins. Co. v. Triangle Indus., Inc.</u>

"Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938). Because choice of law principles do not fall within the ambit of federal law, "federal courts in diversity of citizenship cases are governed by the conflict of laws rules of the courts of the states

SCOTTSDALE INS. CO. V. HARLEYSVILLE INS. CO.
V. LIBERTY SURPLUS INS. CO.

1:11CV33

MEMORANDUM OPINION ON CHOICE OF LAW BRIEFING
PURSUANT TO SUMMARY ORDER [DOCKET NO. 44]

in which they sit." <u>Griffin v. McCoach</u>, 313 U.S. 498, 503 (1941).
Accordingly, West Virginia's choice of law rules will determine
which law applies to the interpretation of the disputed insurance
policies in this case.

The parties agree that, for determining which law applies to
an insurance contract made in one state but performed in another,
the leading West Virginia case is <u>Liberty Mut. Ins. Co. v. Triangle
Indus., Inc.</u>, 390 S.E.2d 562 (W. Va. 1990), which involved a policy
issued in New Jersey where the insured risk was located in West
Virginia and the damage occurred in Ohio. <u>Id.</u> at 566. In <u>Triangle</u>,
to determine which law to apply, the West Virginia Supreme Court of
Appeals reviewed the Restatement (Second) of Conflict of Laws §
193, which provides in pertinent part:

> The validity of a contract of fire, surety or casualty
> insurance and the rights created thereby are determined
> by the local law of the state which the parties
> understood was to be the principal location of the
> insured risk during the term of the policy, unless with
> respect to the particular issue, some other state has a
> more significant relationship under the principles stated
> in § 6 to the transaction and the parties, in which even
> the local law of the other state will be applied.

After reciting the commentary to § 193, the court concluded
that the first clause of that section, which recognizes the

12

"principal location" test, always applies when "the policy will be solicited, delivered, and executed in the same state where the insured is domiciled and the insured risk located." <u>Triangle</u>, 390 S.E.2d at 566. However, where "the place of contract and the place of the insured risk are different," § 193 adopts an alternative test, known as the "more significant relationship" test, depending on the significance of the relationship. <u>Id.</u> at 567. <u>Triangle</u> articulated the applicable rule as follows:

> [I]n a case involving the interpretation of an insurance policy, made in one state to be performed in another, the law of the state of the formation of the contract shall govern, unless another state has a more significant relationship to the transaction and the parties, or the law of the other state is contrary to the public policy of [West Virginia].[2]

<u>Id.</u>

A close reading of § 193 and the rule from <u>Triangle</u> underscores that, while § 193 looks to the location of the insured risk, the rule of <u>lex loci contractus</u> will apply to insurance contracts such as those in dispute in this case "unless [West Virginia] has a more

---

[2] The "contrary to West Virginia public policy" caveat is not relevant here. The Southern District of West Virginia has already determined that "Pennsylvania's contract interpretation principles are [not] contrary to the public policy of West Virginia." <u>Energy Corp. v. Bituminous Cas. Corp.</u>, 543 F. Supp. 2d 536, 543 (S.D.W. Va. 2008).

significant relationship to the transaction and the parties."
<u>Triangle</u>, 390 S.E.2d at 567. <u>See also</u> <u>Johnson v. Neal</u>, 418 S.E.2d
349, 352 (W. Va. 1992).

In determining whether West Virginia's relationship to the
transaction and parties was more significant than that of New
Jersey, <u>Triangle</u> applied seven (7) factors listed in the
Restatement (Second) of Conflict of Laws § 6. These factors
include:

(a) the needs of the interstate and international
systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and
the relative interests of those states in the
determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of
law,

(f) certainty, predictability and uniformity of result,
and

(g) ease in the determination and application of the law
to be applied.

In applying these factors to the insurance contract, <u>Triangle</u>
provided the following analysis:

**SCOTTSDALE INS. CO. V. HARLEYSVILLE INS. CO.
V. LIBERTY SURPLUS INS. CO.**

**1:11CV33**

**MEMORANDUM OPINION ON CHOICE OF LAW BRIEFING
PURSUANT TO SUMMARY ORDER [DOCKET NO. 44]**

> After reviewing the factors found in § 6 of the
> Restatement, we are of the opinion that the law of the
> state of the contract [i.e., New Jersey] should apply.
> We believe that "certainty, predictability and uniformity
> of result," as well as "ease in the determination and
> application of the law to be applied" is essential to the
> interpretation of an insurance policy when the law is not
> otherwise chosen by the parties. Given the increasingly
> complex nature of the insurance industry, we believe that
> the needs of the "interstate" system of insurance require
> that law be applied in the most uniform and predictable
> manner possible. Although we recognize that, in this
> case, both West Virginia and Ohio have significant
> relationships to the transaction, the policy was
> bargained for, created, and agreed to in New Jersey by
> both parties. We do not believe the insurance company
> demonstrated any reasonable expectation at the time the
> contracts were entered into that any litigation over the
> policy would be based upon West Virginia law.

Triangle, 390 S.E.2d at 567.

Pursuant to Triangle, absent some unique state policy, the

three "policy-based" factors from § 6 are largely irrelevant.

Rather, a court should focus on the other four factors, namely the

needs of the interstate system, the protection of justified

expectations, certainty, predictability and uniformity in result,

and ease in the determination and application of the law to be

applied.

Before applying these four (4) factors here, the Court first

must weight Scottsdale's proposal urging it to apply a single

15

SCOTTSDALE INS. CO. V. HARLEYSVILLE INS. CO.
V. LIBERTY SURPLUS INS. CO.

**1:11CV33**

**MEMORANDUM OPINION ON CHOICE OF LAW BRIEFING
PURSUANT TO SUMMARY ORDER [DOCKET NO. 44]**

state's law to all three policies, rather than analyze the policies piecemeal. Scottsdale contends that, in a case like this, involving multiple insurance policies, the law of the state most common to the parties should govern all the policies at issue. According to Scottsdale, "only West Virginia is even arguably common to all of the parties." It offers no authority for this proposed rule.

Besides lacking a basis in law, Scottsdale's proposed rule merely is another way of saying that the law of the state where an incident occurs, or <u>lex loci delicti</u>, ought to govern the interpretation of all the disputed liability policies. In Scottsdale's view, out-of-state contractors with out-of-state insurance carriers lack ties to other states until they begin a project in one of them. They then hire local or out-of-state subcontractors, who may or may not have ties to the state where the property is located. Regardless, according to Scottsdale, the only common denominator will always be the state where the harm occurs.

To be sure, West Virginia "adheres to the conflicts of law doctrine of <u>lex loci delicti</u>." Syl. Pt. 1, <u>Paul v. Nat'l Life</u>, 352 S.E.2d 550, 550 (W. Va. 1986). "However, the <u>lex loci delicti</u> rule has generally been applied to clear-cut cases of physical injury,"

SCOTTSDALE INS. CO. V. HARLEYSVILLE INS. CO.
V. LIBERTY SURPLUS INS. CO.

1:11CV33

MEMORANDUM OPINION ON CHOICE OF LAW BRIEFING
PURSUANT TO SUMMARY ORDER [DOCKET NO. 44]

i.e. torts. <u>Oakes v. Oxygen Therapy Svcs.</u>, 363 S.E.2d 130, 131 (W. Va. 1987). Contract interpretation, on the other hand, generally is governed by the law of the state "where the contract of insurance was issued and the insured resided," i.e. <u>lex loci contractus</u>. <u>Lee v. Saliga</u>, 373 S.E.2d 345, 349 (W. Va. 1988); <u>see also</u> <u>Triangle</u>, 390 S.E.2d at 565 (noting that "the interpretation of insurance policy coverage, rather than liability, is treated as a contract question for purposes of conflicts analysis"). Thus, because Scottsdale's proposed choice of law rule ignores the rule of <u>lex loci contractus</u>, the Court rejects it and will apply the choice of law rules from <u>Triangle</u> to the disputed policies individually in order to determine the law applicable to each.

**B.    The Harleysville Policy**

It is undisputed that Hurst-Weiss Insurance solicited, delivered and executed the Harleysville policy to Lonnie Ball in Pennsylvania. Confined to these facts, <u>lex loci contractus</u> would dictate that the Court apply Pennsylvania's contract law to the parties' dispute. Pursuant to <u>Triangle</u>, however, where the contract is formed in one state and the insured risk is located in another, the other state's contract law might apply if that state's

**MEMORANDUM OPINION ON CHOICE OF LAW BRIEFING
PURSUANT TO SUMMARY ORDER [DOCKET NO. 44]**

relationship to the parties and the transaction is more significant than that of the state where the contract was formed. Thus, it is necessary to determine the state of the insured risk under the Harleysville Policy.

Unsurprisingly, Harleysville and Scottsdale disagree about the state of the insured risk; Scottsdale argues that West Virginia is the state of the insured risk, while Harleysville argues its policy insured risks located primarily in Pennsylvania. In fact, the policy's schedule identifies two work sites in Pennsylvania, 12 North Water Street, Point Marion, Pennsylvania, and 801 Lynda Lane, North Versailles, Pennsylvania.

Insuring risks in multiple states, however, is a common characteristic of commercial general liability (CGL) policies, the very nature of which often precludes the particularized identification of covered project sites. Should the insured undertake a project after the issuance of a CGL policy, but before its expiration, the policy necessarily must have the built-in flexibility to cover the additional project. For this reason, the CGL portion of the Harleysville Policy does not itemize all its

SCOTTSDALE INS. CO. V. HARLEYSVILLE INS. CO.
V. LIBERTY SURPLUS INS. CO.

**1:11CV33**

MEMORANDUM OPINION ON CHOICE OF LAW BRIEFING
PURSUANT TO SUMMARY ORDER [DOCKET NO. 44]

insured risks, and one cannot determine the location of those insured risks simply by reading it.

The Certificate of Liability Insurance, on the other hand, demonstrates that Harleysville was aware of the Fairfield Inn Project before it agreed to renew the Harleysville Policy. Harleysville issued the certificate of insurance to Wright Development on September 3, 2008, and, three months later, renewed its policy with Lonnie Ball. Therefore, both Lonnie Ball and Harleysville contemplated that renewal of the Harleysville Policy would cover the Fairfield Inn Project as an insured risk. West Virginia, thus, was at least one of multiple states where Harleysville insured risks under its policy with Lonnie Ball.

The Court next considers whether, under the § 6 factors, West Virginia had a more significant relationship to the parties and the transaction than Pennsylvania, the locus of the insurance contract. As has already been noted, CGL policies usually insure risks in multiple states. Thus, were courts to adopt a rule uniformly applying the law of the state of the insured risk to CGL policies, especially policies issued to large companies, the laws of as many as fifty different states might apply.

Such a result would confound all of the relevant factors under § 6. It would, for instance, defy the expectations of Harleysville and Wright, and undermine the predictability and uniformity of the law, which does not presume that parties to a CGL policy reasonably expect that the law of any state where litigation commences will apply to their policy. Such a presumption, having its roots in <u>lex loci delicti</u>, is contrary to the rule of <u>lex loci contractus</u> applicable to the interpretation of insurance policies.

For the same reasons, the predictability of applying Pennsylvania law to the Harleysville Policy would better serve the needs of the interstate judicial system. Given the tenuous connection between West Virginia and the Harleysville Policy, applying West Virginia law in this case would confuse courts deciding which law to apply in subsequent cases.

Finally, applying the law of a state where there is an insured risk simply because the harm occurs there would detract from the ease of determining which law to apply. In future cases, Harleysville would have to assess the significance of a particular state's risk relative to that of another state, an analysis that, among other things, could involve complex accounting and financial

SCOTTSDALE INS. CO. V. HARLEYSVILLE INS. CO.
V. LIBERTY SURPLUS INS. CO.

1:11CV33

MEMORANDUM OPINION ON CHOICE OF LAW BRIEFING
PURSUANT TO SUMMARY ORDER [DOCKET NO. 44]

models.  See Energy Corp. v. Bituminous Cas. Corp., 543 F. Supp. 2d
536, 543 (S.D.W. Va. 2008)(applying Pennsylvania law to a CGL
policy issued in that state because, otherwise, the parties to the
contract would "have to negotiate separate contracts for each state
where an insured risk is located").

Nevertheless, Scottsdale contends that Joy Technologies, Inc.
v. Liberty Mut. Ins. Co., 421 S.E.2d 493 (W. Va. 1992), controls
the outcome here.  In Joy Technologies, Liberty Mutual Insurance
Company ("Liberty Mutual"), a Massachusetts corporation, had issued
a comprehensive general liability insurance policy to Joy
Technologies ("Joy"), a Pennsylvania corporation, which for over
twelve years, had operated a facility in Bluefield, West Virginia
that cleaned and rebuilt mining machinery.  Id. at 494-95.  Several
years after Joy ended its operations, the Environmental Protection
Agency discovered that those operations had contaminated the
Bluefield property and neighboring lands with polychlorinated
biphenyls.  Id.  After being sued in connection with the pollution,
Joy filed a claim for coverage with Liberty Mutual, which denied
the claim.  Id. at 495.  Joy then sued Liberty Mutual, seeking a
declaration of coverage.  Id.  A primary issue in the case was the

SCOTTSDALE INS. CO. V. HARLEYSVILLE INS. CO.
V. LIBERTY SURPLUS INS. CO.

**1:11CV33**

MEMORANDUM OPINION ON CHOICE OF LAW BRIEFING
PURSUANT TO SUMMARY ORDER [DOCKET NO. 44]

choice of law governing the interpretation of the policy's exclusion clause. <u>Id.</u>

In deciding this issue, the West Virginia Supreme Court of Appeals first acknowledged the rule of <u>lex loci contractus</u> and the significant relationship test from <u>Triangle</u>. Based on public policy grounds, however, it applied West Virginia contract law. <u>See Cannelton Ind., Inc. v. Aetna Cas. & Sur. Co.</u>, 460 S.E.2d 1, 10 (W. Va. 1994) (explaining that, in <u>Joy Technologies</u>, "we did not find it necessary to base our decision on the [more significant relationship] exception to conclude the law of West Virginia applied").

According to the court, prior to suit being filed against Liberty Mutual, the regulatory authority in West Virginia had notified it that West Virginia law would apply. <u>See Joy Technologies</u>, 421 S.E.2d at 497. Because of Liberty Mutual's prior understanding, the court concluded that the ex-post application of Pennsylvania law would undermine West Virginia's public policy. <u>Id.</u> The court also found that West Virginia's relationship with the parties and the transaction was significant enough to overcome the

presumption that the law of Pennsylvania, the locus of the contract, applied.

Contrary to Scottsdale's argument, <u>Joy Technologies</u> does not control the outcome in this case for two reasons. First, the environmental public policy concerns at issue in <u>Joy Technologies</u> are not present here; second, the pollution issues presented in that case differ significantly from the building construction issues in dispute here. Pollution causes far-reaching, long-lasting harm to both the land and individual citizens of a state; thus the state where the pollution occurs clearly has an interest in applying its own law to resolve such disputes. That compelling interest does not exist here, where the injury is the alleged faulty construction of a private hotel.

Scottsdale, however, points out that the Southern District of West Virginia has applied <u>Joy Technologies</u> outside the context of pollution cases. <u>See</u> <u>North Am. Precast, Inc. v. General Cas. Co.</u>, No. 2:04-1306, 2008 WL 906334, at *3 (S.D.W. Va., Mar. 31, 2008). Even so, <u>North American Precast</u> is distinguishable for at least two reasons. First, the holder of the insurance certificate in that case, Wiseman Construction, Inc., was a West Virginia corporation.

23

North American Precast, 2008 WL 906334, at *1. Consequently, West Virginia's relationship to the parties was more significant than here, where Wright Development, the holder of the Certificate of Liability Insurance, is a foreign entity. Second, that case revolved around the construction of a public facility, a West Virginia Juvenile Detention Center. Id. The construction of a state building pursuant to a state contract obviously deepens the state's relationship to the liability policy insuring the project. In contrast, the instant case involves no government contracts and no public buildings. The state's public interest therefore is not implicated, and West Virginia's relationship to the transaction lacks the significance found in North American Precast.

Given these considerations, following a careful weighing of the relevant factors, the Court concludes that West Virginia's relationship to Lonnie Ball and Harleysville, or the various projects contemplated under the Harleysville Policy, is not significant enough to outweigh the fact that the locus of the contract is Pennsylvania. Cf. Howe v. Howe, 625 S.E.2d 716, 723 (W. Va. 2005) (applying Ohio rather than West Virginia law, because "[t]he only relationship West Virginia has to the parties or

24

transactions at issue is the 'mere fortuity' that the accident at issue occurred within our borders"). The Court, therefore will interpret the Harleysville Policy under Pennsylvania law.

## C. **The Scottsdale Policy**

In its interpretation of the Scottsdale Policy, the Court eventually will have to examine, among other things, the interaction of the "other insurance" provision in that policy with the Harleysville Policy. Prior to engaging in that analysis however, it must first determine the applicable contract law to apply to the Scottsdale Policy.

Crump is an Oregon insurance agency that issued the Scottsdale Policy to Wright, an Oregon resident. The named insureds included, among others, Wright Development and Wright California, both Oregon companies. The several locations scheduled in the policy include two work sites in Oregon, two in California, and one in South Carolina. Clearly, Oregon is the place of solicitation, execution and delivery of the insurance contracts.

If Oregon law presumptively governs the Scottsdale Policy, the question becomes whether either of the two exceptions under Triangle should apply. The parties have failed to point to any

**MEMORANDUM OPINION ON CHOICE OF LAW BRIEFING
PURSUANT TO SUMMARY ORDER [DOCKET NO. 44]**

contradiction of public policy between Oregon and West Virginia contract law, thus leaving as the only question whether West Virginia has a more significant relationship to Scottsdale and the Wright entities, as well as to the transactions contemplated under the Scottsdale Policy.

The sole connection linking Scottsdale and the Wright entities to West Virginia is the Fairfield Inn Project. As demonstrated by the schedule of locations in the Scottsdale Policy, however, the Fairfield Inn Project is one of at least six insured risks, and the only one in West Virginia. In this Court's opinion, such a minimal connection is not the type of significant relationship contemplated by _Triangle_ to establish an exception to the rule of _lex loci contractus_.

Furthermore, the § 6 factors cut against the application of West Virginia law. It is doubtful that Scottsdale and Wright would have anticipated that their insurance agreement would be construed in a different way every time litigation arose in a different state. Had they expected such a result, different constructions of the same policy undermine the uniformity and predictability of the legal analysis so desirable in a contractual relationship. Finally,

preparing for litigation under the laws of numerous states presents a daunting challenge.

For these reasons, the Court concludes that the more significant relationship exception to the rule of <u>lex loci contractus</u> does not apply in this case, and the law of Oregon, the state of the insurance contract's formation, should govern the interpretation of the Scottsdale Policy.

**D. <u>The Liberty Surplus Policy</u>**

Finally, the Court turns to the Liberty Surplus Policy, which provides excess insurance to Wright to cover legal proceedings against Wright and the Wright entities that exceed the coverage limits under the Scottsdale Policy. As this litigation proceeds, the Court may be called on to interpret the Liberty Surplus Policy to determine whether its obligation to defend and indemnify Wright was triggered.

As with the Scottsdale Policy, the Liberty Surplus Policy was solicited, executed and delivered in Oregon, where Crump issued the policy to Wright Development (later Wright SC). Moreover, the policy names Corporation Service Company, with its address in Salem, Oregon, as the service agent. Furthermore, there are no

**SCOTTSDALE INS. CO. V. HARLEYSVILLE INS. CO.
V. LIBERTY SURPLUS INS. CO.**

**1:11CV33**

**MEMORANDUM OPINION ON CHOICE OF LAW BRIEFING
PURSUANT TO SUMMARY ORDER [DOCKET NO. 44]**

public policy contradictions between Oregon and West Virginia contract law that would compel the application of West Virginia law. Therefore, for the same reasons applicable to the Scottsdale Policy, the Court concludes that West Virginia's relationship to Wright and Liberty Surplus, as well as to the projects contemplated under the Liberty Surplus Policy, do not outweigh the presumption that Oregon's law controls the interpretation of the Liberty Surplus Policy.

### III. CONCLUSION

For the reasons discussed, the Court will apply Pennsylvania law to the interpretation of the Harleysville Policy, and Oregon law to the Scottsdale and Liberty Surplus Policies.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: December 24, 2013.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE